IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAYMOND HILL,                               :
    Plaintiff,                         :
                                       :
    v.                                 :         CIVIL ACTION NO. 25-CV-5393
                                       :
CHESTER COUNTY PRISON,                      :
    Defendant.                         :

**MEMORANDUM**

**PADOVA, J.**                                                              **MARCH 5, 2026**

*Pro se* incarcerated Plaintiff Raymond Hill initiated this civil action by filing a complaint

under 42 U.S.C. § 1983 against Chester County Prison ("CCP"). In a Memorandum and Order,

the Court granted Hill's motion to proceed *in forma pauperis* and dismissed the complaint under

28 U.S.C. § 1915(e)(2)(B)(ii), with leave to amend. *See Hill v. Chester Cnty. Prison*, Civ. A.

No. 25-5393, 2025 WL 3488281, at *4 (E.D. Pa. Dec. 4, 2025). Hill submitted this Amended

Complaint, which brings claims against Chester County, the Commonwealth of Pennsylvania,

and two corrections officers at CCP. (*See* ECF No. 11 at 2-3.) On screening, the Court will

dismiss the Amended Complaint.

## I.    FACTUAL ALLEGATIONS[1]

The Amended Complaint alleges that Hill is a pretrial detainee incarcerated at CCP.

(Am. Compl. at 2, 4.) On September 13, 2025, Hill was housed on the "M-Even" block. (*Id*. at

---

[1] The factual allegations set forth in this Memorandum are taken from Hill's Amended
Complaint ("Am. Compl."). (ECF No. 11.) The Court adopts the pagination supplied by the
CM/ECF docketing system. The Court may consider matters of public record when conducting a
screening under § 1915. *Castro-Mota v. Smithson*, Civ. A. No. 20-940, 2020 WL 3104775, at *1
n.3 (E.D. Pa. June 11, 2020) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir.
2006)). Where the Court quotes from the Amended Complaint, punctuation, spelling, and
capitalization errors will be cleaned up as needed.

13.)  That morning, heavy cleaning of the cells was taking place when another inmate, Gomez, said something in Spanish and punched Hill in the face.  (*Id.*)  Hill "put [his] guard up" and a fight ensued.  (*Id.*)  Initially, no correctional officers were present, but when one returned to his station, he directed Hill and Gomez to lock in their cells.  (*Id.*)  Gomez, however, continued to chase Hill.  (*Id.*)  After Hill locked in, Gomez attempted to hit him with a broom through the bars.  (*Id.*)  Three other correctional officers came to the block to restrain Gomez.  (*Id.*)  As a result of the fight, Hill was placed on R-block, the Restricted Housing Unit ("RHU"), that morning.  (*Id.*)

Hill claims that, right after being locked into his RHU cell, he made Defendant Correctional Officer Mills aware of an upcoming suppression hearing on Monday morning, September 15, 2025, in a criminal matter in which Hill was representing himself.  (*Id.* at 14.)  Mills allegedly responded "Ok[ay]."  (*Id.*)  As part of the electronic discovery in his criminal case, the district attorney sent a thumb drive containing body camera footage to Hill at CCP, and it arrived on the afternoon of September 13.  (*Id.*)  A prison counselor notified Hill about its arrival and said that the correctional officers in the RHU block would arrange for Hill to view the contents of the thumb drive over the weekend, before Monday.  (*Id.*)  Hill asked Defendant Mills seven times throughout the day on Sunday to view the electronic discovery and to access the law library, but he was denied access all seven times.  (*Id.* at 14-15.)  Hill claims he was "handicapped" by the lack of access to materials and was unprepared for the hearing.  (*Id.* at 15.)  He states that the judge "ruled that [he] had a fatal flaw in his suppression hearing."  (*Id.*)

In the RHU, inmates are only permitted to shower three days in a seven-day period.  (*Id.*)  Hill's hygiene items were confiscated, and his access to a toothbrush, toothpaste, shampoo, brush, and soap were limited to shower days.  (*Id.* at 15-16.)  Mills refused to provide Hill with a

toothbrush. (*Id*. at 15.) Even though he ate three times a day, Hill was only allowed to brush his teeth three times a week. (*Id*.) The lack of dental care caused him pain, and his gums bled. (*Id*.) He developed sores on his head due to severe dry scalp because he was unable to use his medicated shampoo daily. (*Id*. at 16.)

During the entire five-day period that Hill was in the RHU, he "was on 24 hour lock down" (*id*.), with no recreation (*id*. at 7). Another inmate in the RHU told Hill that he had been in the RHU for forty days in lockdown, without any recreation time. (*Id*. at 16.) Defendant Corrections Officer Woods, who works the overnight shift, was "burning [Hill] and every other inmate on R-block for recreation." (*Id*.) Recreation time is supposed to take place in the morning after breakfast. (*Id*.) Hill claims that he filed a grievance challenging the twenty-four-hour lockdown, lack of hygiene items, and lack of recreation. (*Id*. at 7.) The grievance was filed before he was denied access to his discovery material and the law library.[2] (*Id*.) He received a hearing on his grievance and was told that the lack of recreation issue would be addressed, but things did not change. (*Id*. at 7, 17.) Hill states that he verbally requested to appeal the decision because the grievance form does not contain the option for appeal. (*Id*. at 7.)

In his Amended Complaint, Hill claims that his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments have been violated.[3] (*Id*. at 3.) Hill asserts that his injuries

---

[2] It is unclear how the grievance for the denial of recreation time and of regular access to hygiene routines for five days was filed before Hill was allegedly denied access to the law library and discovery material. According to the Amended Complaint, the alleged denial of discovery and the law library access occurred on the second day Hill was in the RHU. (Am. Compl. at 14.)

[3] Hill alleges that he was a pretrial detainee at the time of the alleged events. (Am. Compl. at 4.) Accordingly, it is the Fourteenth Amendment, not the Eighth Amendment, that governs his claim for deliberate indifference. *See Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 193-94 (3d Cir. 2021) (citation omitted). Although Hill lists "retaliation" among the constitutional rights that he asserts were violated, he alleges no facts in his Amended Complaint that support a

include the "fatal flaw in the decision of [his] suppression hearing," and physical effects to his

scalp and teeth from the lack of hygiene and to his joints and back due to the lack of exercise.

(*Id.* at 5.)  He also states that he suffered "mental depression."  (*Id.*)  As relief, he seeks money

damages and requests that the RHU policies be changed.  (*Id.*)

---

First Amendment retaliation claim, and it will be dismissed for failure to state a claim pursuant
to 28 U.S.C. § 1915(e)(2)(B)(ii).

Likewise, Hill lists "false imprisonment" as one of the constitutional rights violated (*see*
Am. Compl. at 3), but the basis for this claim is not at all clear from the Amended Complaint.
To the extent that the claim could be construed as one alleging a due process violation for his
placement in the RHU for presumably disciplinary reasons, he fails to state a plausible claim.
"Generally, prisons may sanction a pretrial detainee for misconduct that he commits while
awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands
accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*,
172 F.3d 999, 1003-06 (7th Cir. 1999)) (citing *Bell v. Wolfish*, 441 U.S. 520, 535, 539 (1979);
*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)).  For pretrial detainees, "the imposition of
disciplinary segregation for violation of prison rules and regulations cannot be imposed without
providing the procedural due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . .
. (1974)." *Kanu*, 739 F. App'x at 116.  Such "protections include the right to receive written
notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses
and documentary evidence, and a written statement of the reasons for the disciplinary action
taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66).

Hill was placed in the RHU because he was involved in a fight on September 13, i.e.,
according to the Amended Complaint, he was punched by another inmate when no prison staff
were present, he "put [his] guard up," and "a fight broke out." (Am. Compl. at 13.)  He admits
that "as a result of the fight I was placed in the R-block (RHU)." (*Id.*)  From these allegations
and admissions in the Amended Complaint, it is clear that his placement in the RHU was not due
to his underlying conviction, but was due to his actions while incarcerated in CCP. *See Kanu*,
739 F. App'x at 116.  The Court further observes that Hill does not allege that the confinement
was excessively long or that he lacked access to procedural review.  It appears that he was held
in the RHU for five days, because he claims that the "whole time [he] spent on R-block [he] was
on 24 hour lock down" (Am. Compl. at 16), and that he "spent a total of 5 days on 24 hour lock
in with no recreation" (*id.* at 7).  Further, the Amended Complaint reflects that Hill had a
hearing, as well as access to the grievance procedure, which he utilized.  (*Id.* at 17 ("I filed a
grievance and had a hearing . . . .")); *see Kanu*, 739 F. App'x at 117 (rejecting claim that prison
violated due process because plaintiff could file post-disciplinary administrative segregation
requests for information and grievances challenging segregation within four days of his change
of status).  Hill has not raised a plausible claim for a due process violation for when he was
placed in the RHU for five days and thus, that claim it will be dismissed pursuant to 28 U.S.C. §
1915(e)(2)(B)(ii).

4

## II.    STANDARD OF REVIEW

Because the Court granted Hill *in forma pauperis* status, the Court must screen the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires dismissal if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the amended complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  The Court will accept the facts alleged in the *pro se* amended complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the amended complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

The Court construes the allegations of a *pro se* litigant liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.* (quoting *Mala*, 704 F.3d at 244).

## III.    DISCUSSION

The vehicle by which constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  The statute "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted).  "To state a claim under § 1983, a plaintiff must allege the

violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (citations omitted); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

### A.    Defendant Commonwealth of Pennsylvania

In his Amended Complaint, Hill seeks to name the Commonwealth of Pennsylvania as a Defendant.  As a factual matter, however, Hill has not pleaded any allegations against the Commonwealth of Pennsylvania.  Even if he had, any claims against the Commonwealth of Pennsylvania would necessarily be dismissed because states are not considered "persons" for purposes of § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989).  Furthermore, the Eleventh Amendment bars federal suits seeking monetary damages against a state and its agencies.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  The Commonwealth of Pennsylvania has not waived that immunity.  *See* 42 Pa. Cons. Stat. § 8521(b).  Accordingly, all claims against the Commonwealth of Pennsylvania will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

B.    **Individual Capacity Claims Against Mills and Woods**

1.    **Conditions of Confinement in RHU**

Hill claims that Mills deprived him of access to regular hygiene products and routines (*see* Am. Compl. at 15-16), and that Woods failed to permit any recreation time (*see id.* at 16), while he was held in the RHU.[4]  Pretrial detainees like Hill are protected from "punishment" by the Due Process Clause of the Fourteenth Amendment.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  "Unconstitutional punishment typically includes both objective and subjective components."  *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  "The objective component requires an inquiry into whether 'the deprivation [was] sufficiently serious' and the subjective component asks whether 'the officials act[ed] with a sufficiently culpable state of mind[.]'"  *Id.* (alterations in original) (quoting *Wilson v. Seiter*, 501 U.S. 295, 298 (1991)).  To meet the subjective component, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded an excessive risk to the detainee's health or safety.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (defining deliberate indifference); *Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference." (alteration in original) (quoting *Farmer*, 511 U.S. at  837)); *cf. Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) (finding "no reason to apply a different standard [in a case involving a pretrial detainee] as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees."

---

[4] The Amended Complaint alleges that Woods worked the overnight shift, yet Hill claims that recreation time is supposed to occur "in the morning after chow."  (Am. Compl. at 16.)  Hill does not explain how Woods is responsible for a lack of recreation time during the morning if Woods works during the night.

(internal citations omitted)).  Courts will consider the totality of the circumstances in evaluating whether the lack of physical exercise constitutes punishment, including the length of the deprivation, the availability of recreation within the cell, and whether the inmate suffered any ill health effects as a result of the deprivation.  *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (*per curiam*) (citing *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992); *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995); *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)).

Hill alleges in the Amended Complaint that he was placed in the RHU "as a result of the fight" he was involved in on September 13.  (Am. Compl. at 13.)  He maintains that RHU inmates are only permitted to shower and use hygiene products three times a week.[5]  (*Id.* at 15-16.)  He also claims that he was "locked down" during the entire five-day stay in the RHU and did not have any recreational time.  (*Id*. at 7, 16.)  These short-term restrictions on showers, tooth brushing, and exercise in the RHU do not satisfy either the objective or subjective components of a due process claim.  Courts have held that the Fourteenth Amendment due process clause does not require prisons to allow pretrial detainees access to showers or hygiene products on a daily basis.  *See, e.g., Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) (concluding that limited access to showers for fifteen days did not violate the Eighth Amendment); *Watson v. Sec'y Pennsylvania Dep't of Corr*., 567 F. App'x 75, 79 (3d Cir. 2014) (*per curiam*) (affirming district court's dismissal of Eighth Amendment claim alleging that plaintiff had to brush teeth with worn down toothbrush and periodically obtained toothpaste periodically from other inmates

---

[5] Hill's Amended Complaint is unclear on exactly how many times he was permitted to shower and brush his teeth.  He states that he was in the RHU from September 13, a Saturday, through September 17, a Wednesday, which would be five days (*see* Am. Compl. at 7, 16), and he also alleges that RHU occupants are allowed three showers within a seven-day period (*see id.* at 15).

but occasionally went days without it); *Barndt v. Wenerowicz*, Civ. A. No. 15-2729, 2016 WL 6612441, at *4 (E.D. Pa. Nov. 8, 2016) (denial of showers for twenty-eight days did not violate Eighth Amendment when plaintiff did not suffer ill effects and had access to running water in his cell), *aff'd,* 698 F. App'x 673 (3d Cir. 2017); *Conklin v. Youngkin*, Civ. A. No. 24-0029, 2024 WL 289344, at *3 (M.D. Pa. Jan. 25, 2024) (concluding that four-day deprivation of showers fell "woefully low of the constitutional threshold for a violation"); *Rice v. Dauphin Cnty. Prison*, Civ. A. No. 16-1021, 2016 WL 4264386, at *3 (M.D. Pa. Aug. 12, 2016) (ruling that plaintiff's inability to access hygiene amenities during four-day restricted confinement did not violate Eighth Amendment); *Barnes v. Cnty. of Monroe*, 85 F. Supp. 3d 696, 738 (W.D.N.Y. 2015) ("To the extent Plaintiff alleges that his inability to shower over the course of four days constitutes a constitutional deprivation, his claim must fail.  Even a two-week suspension of shower privileges does not constitute a denial of basic hygienic needs." (quotation omitted)).

Further, Hill's assertion that the prison did not afford him recreation time and exercise for five days does not constitute the type of serious deprivation that amounts to a constitutional violation.  *See, e.g., Fortune*, 379 F. App'x at 122 (stating that fifteen-day limitation of exercise did not violate constitution); *Barndt*, 2016 WL 6612441, at *4 (concluding that twenty-eight-day deprivation did not violate constitution where plaintiff suffered no ill effects and had room to exercise in his cell).  Hill's Amended Complaint alleges that, because of the lack of exercise for five days in the RHU, he had "mental depression, [and] pain in joints and back from lack of movement."  (Am. Compl. at 5.)  Considering the totality of circumstances including the short period of the alleged deprivation, the temporary and minimal nature of the alleged physical conditions, the lack of any "more-than-*de minimis*" physical injury resulting from the lack of exercise, and also recalling that "routine discomfort is part of the penalty that criminal offenders

9

pay for their offenses against society," *Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (quotation omitted), the Court concludes that Hill has not stated a plausible claim that the lack of recreational time for five days violated the constitution. *See Walker v. Sorber*, Civ. A. No. 21-3477, 2022 WL 4586137, at *7 (E.D. Pa. Sept. 29, 2022) (noting that a thirty-day deprivation of access to outdoor exercise does not ordinarily give rise to an Eighth Amendment claim (citing *Liles v. Camden Cnty. Dep't of Corr.*, 225 F. Supp. 2d 450, 461 (D.N.J. 2002)).

For these reasons, the conditions of confinement claims alleged against Mills and Woods will be dismissed with prejudice. *See Conklin*, 2024 WL 289344, at *3-4 (dismissing complaint under § 1915(e)(2)(B)(ii) with prejudice because amendment would be futile where plaintiff alleged that he was not permitted to shower or exercise outside in the recreation yard for four days).

### 2.    Access to Courts Claim

Hill asserts that he was placed in the RHU on Saturday, September 13, and that discovery sent from the assistant district attorney in his criminal case arrived that day.[6]  (Am. Compl. at 14.)  He alleges that he asked to view the discovery material seven times on Sunday, September 14, in preparation for a suppression hearing the next day, during which he expected to represent himself, but Mills denied the requests.  (*Id*. at 14-15.)  The Court understands Hill to assert that the denial of access to the discovery material and to the law library before his suppression hearing constituted a denial of access to courts.

---

[6] Hill awaits trial in three criminal matters in Chester County.  *See Commonwealth v. Hill*, CP-15-CR-0001493-2024 (C.P. Chester); *Commonwealth v. Hill*, CP-15-CR-0001496-2024 (C.P. Chester); *Commonwealth v. Hill*, CP-15-CR-0002396-2024 (C.P. Chester).

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citation omitted).  For a pretrial detainee, that right of access to the courts includes "legal assistance and participation in one's own defense against pending criminal charges."  *Petlock v. Nadrowski*, Civ. A. No. 16-310, 2016 WL 7173781, at *10 (D.N.J. Dec. 8, 2016) (quotation omitted).  A prisoner asserting that defendants interfered with their ability to present a past legal claim must plead "(1) that they suffered an 'actual injury' – that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."  *Monroe*, 536 F.3d at 205 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)); *see also Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010) (*per curiam*) (stating that a pretrial detainee "making an access-to-courts claim is required to show that the denial of access caused actual injury" (citing *Lewis v. Casey*, 518 U.S. 343, 352-54 (1996)).  Furthermore, "the underlying cause of action . . . is an element that must be described in the complaint."  *Harbury*, 536 U.S. at 415.

Even assuming that he were proceeding *pro se* in his criminal cases as he alleges on September 15, he has failed to plead a plausible access-to-courts claim.[7]  The Amended

---

[7] Ordinarily, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (citations omitted); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*).  In the Amended Complaint, Hill alleges that he informed Mills that he was representing himself at the suppression motion hearing, and that he was unprepared for a suppression hearing on September 15 as a result of Mills denying him access to discovery material.  (Am. Compl. at 14.)  However, the criminal dockets available through the Pennsylvania Judicial Portal appear to reflect that Hill had counsel in his three criminal cases as of September 15, 2025.  *See* Chester Cnty. Crim. Dockets in *Hill*, Nos. CP-15-CR-0001493-2024, CP-15-CR-0001496-2024, and CP-15-CR-0002396-2024.  Moreover, the dockets do *not* reflect a hearing on a motion to suppress or any activity on September 15.  Rather, on September 16, 2025, a defense motion for a continuance of the trial was granted.  It appears that Hill filed a *pro se* motion to suppress in the cases on September 24, 2025, when he would have been out of the RHU and presumably back in the

11

Complaint alleges that Hill was unprepared for his suppression hearing in state court, and that the judge in that matter "ruled that [he] had a fatal flaw in [his] suppression hearing." (Am. Compl. at 15.) Hill fails to describe with any specificity the factual and legal bases he purportedly raised in his motion, in which criminal matter he raised them, and how the discovery material and legal library access related to his motion. He just vaguely asserts that he had a "suppression hearing." (*Id*. at 14, 15); *see Harbury*, 536 U.S. at 415 (requiring plaintiff to plead "the underlying cause of action, whether anticipated or lost"). The Court is left to guess what exactly the "fatal flaw" was, and whether it was related to the discovery materials Hill claims he could not access. *See Monroe*, 536 F.3d at 206 (affirming the district court's dismissal of access-to-courts claim where plaintiffs failed to allege specific facts showing non-frivolous "lost" claims); *cf. Petlock*, 2016 WL 7173781, at *11 (explaining that a plaintiff cannot rely on conclusory allegations that he suffered prejudice to support an access-to-courts claim) (citing *Duran v. Merline*, 923 F. Supp. 2d 702, 722-23 (D.N.J. 2013)).

In any event, Hill has not pleaded—and cannot plausibly plead—that he will have "no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit," considering that he currently awaits trial on criminal charges in the Court of Common Pleas in Chester County, Pennsylvania. *Monroe*, 536 F.3d at 205 (quotation omitted). The right of access to courts means that officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). Hill thus has not plausibly pleaded that he

---

general population at CCP. In at least one of Hill's criminal cases (CP-15-CR-0002396-2024), his appointed counsel apparently moved to a standby counsel role on September 26, 2025. and in another (CP-15-CR-0001496-2024), counsel appears to have withdrawn completely that same day.

has "no other remedy that may be awarded as recompense for his lost suppression claim" than this § 1983 suit. *Monroe*, 536 F.3d at 205. The claim will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### C.    Official Capacity Claims and *Monell* Claim Against Chester County

Finally, in drafting his Amended Complaint, Hill checked the boxes on the form he used indicating that he seeks to name the Corrections Officer Defendants in their individual and official capacities. (*See* Am. Compl. at 3.) Official capacity claims are indistinguishable from claims against the locality that employs them, here, Chester County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

Nonetheless, a locality such as Chester County is not vicariously liable under § 1983 for the actions of its employees. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (holding that local governments can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts." (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986))). Rather, to plead a basis for municipal liability under § 1983, Hill must allege that a Chester County policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly th[e] custom or policy was." *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008)). At the same time, "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *Mulholland v. Gov' t Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *Los*

13

*Angeles v. Heller*, 475 U.S. 796, 799 (1986) (stating that if a municipal employee "inflicted no constitutional injury . . . it is inconceivable that [the municipality] could be liable")) (additional citation omitted).  It therefore follows that, because Hill has failed to plead any plausible underlying constitutional violation, it is inconceivable that the claims against Chester County or Mills and Woods in their official capacities are plausible.  Those claims will therefore be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IV.    **CONCLUSION**

For the foregoing reasons, the Court will dismiss the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  As Hill has already been given an opportunity to flesh out factual allegations in support of plausible legal claims and has failed to do so, the Court concludes that further amendment would be futile.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (finding that amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").

A final order of dismissal will be entered separately.  *See* Fed. R. Civ. P. 58(a).

**BY THE COURT:**

**/s/ John R. Padova, J.**

**JOHN R. PADOVA, J.**

14